UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARLINE WINDOWS INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, an Illinois corporation,<br><br>Defendant. | Case No.: 3:21-cv-00578-RBM-DEB<br><br>**ORDER GRANTING INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[Doc. 39]** |

On July 13, 2022, Defendant Insurance Company of the State of Pennsylvania ("Defendant" or "ICSOP") filed a Motion for Summary Judgment ("MSJ"). (Doc. 39.) Plaintiff Starline Windows Inc. ("Plaintiff" or "Starline") filed a response in opposition to Defendant's MSJ on August 15, 2022 (Doc. 41), and Defendant filed a reply on August 22, 2022 (Doc. 42). Plaintiff and Defendant (collectively, the "Parties") filed a Joint Statement of Undisputed Facts as an attachment to Defendant's reply brief. (*See* Doc. 42–1.)

For the reasons discussed below, Defendant's MSJ is **GRANTED**.

## I.    BACKGROUND

A.    Factual Background

The following facts are not reasonably in dispute. (*See* Doc. 42–1, Joint Statement

of Undisputed Facts at 3–6.)  The Grande at Santa Fe Place, located at 1205 Pacific Coast Highway, San Diego, California 92101 ("Grande North"), is a 39-story condominium tower and was substantially completed on June 30, 2005.  (*Id.* at 3.)  Bosa Development California, Inc. ("Bosa") was the developer and general contractor for Grande North.  (*Id.*)  In June 2003, Starline subcontracted with Bosa to furnish and install a window-wall system at Grande North, which included insulated-glass units ("IGUs"), and Starline issued a 10-year limited warranty for the windows at Grande North ("Starline Warranty").  (*Id.*)  Starline subcontracted with Star Team Installations Inc. ("Star Team") for installation of the window-wall system at Grande North.  (*Id.*)  The IGUs consist of three panes of tempered glass, which are separated by perforated aluminum spacer bars filled with desiccant used to absorb moisture within the IGU.  (*Id.*)  The IGUs were sealed with gray polyisobutylene ("PIB") as a primary sealant.  (*Id.*)

Beginning in March 2014, Starline became aware that numerous homeowners at Grande North served Notices of Claims under Civil Code § 895, *et seq.*, and under the Starline Warranty concerning the IGUs located in their condominium units ("Window Claims").  (*Id.* at 3–4.)  Specifically, the homeowners alleged failure and migration of PIB sealant within the IGUs.  (*Id.* at 4.)  In some instances, the PIB migrated onto the glass panes of the IGUs, resulting in visual obstructions.  (*Id.*)  Some units experienced the PIB migrating onto the perforated spacer bars, which can impair the desiccant's ability to absorb moisture and prevent fogging inside the IGUs.  (*Id.*)  The claims by the homeowners did not involve physical injury to any property other than the IGUs Starline contracted to furnish and install at Grande North.  (*Id.*)

The affected IGUs at Grande North are primarily located on the South and West elevations of the building as these are the elevations which experience the most ultraviolet ("UV") radiation from exposure to sunlight.  (*Id.*)  The affected PIB fundamentally changed over time, losing molecular weight due to UV radiation.  (*Id.* at 5.)  The PIB's loss of molecular weight reduced its viscosity and increased its propensity to flow.  (*Id.*)  As the PIB liquefied and lost viscosity, it migrated from its original position between the spacer

bars and the glass edges, and in some instances, onto the viewing areas of the glass surfaces and the spacer bars of the IGUs.  (*Id.*)  As it moved, the PIB also changed color, becoming grayish and somewhat opaque.  (*Id.*)  Approximately half of the IGUs installed at Grande North were affected, and the remaining fifty percent of the IGUs at Grande North were unaffected and remain in place as originally installed.  (*Id.*)

Bosa had purchased a primary Owner Controlled Insurance Program ("OCIP") policy underwritten by Liberty Mutual Fire Insurance Company (policy number RG2- 691- 004303-023, effective July 1, 2003) "to cover itself and its subcontractors for course of construction and completed operations liability regarding Grande North" ("Liberty Policy").  (*Id.* at 6.)  Bosa also purchased a first layer of "Follow Form Excess Liability" coverage from ICSOP (policy number 4203-4877, effective July 1, 2003) which incorporated the coverage provided by the Liberty Policy ("ICSOP Policy").  (*Id.*)  The Liberty Policy and the ICSOP Policy (collectively, the "OCIP Policy") form the OCIP Policy purchased by Bosa.  (Doc. 39–1 at 12.)

On July 22, 2014, Starline executed a Repair Agreement with Bosa under which Starline agreed to replace certain IGUs at Grande North in accordance with the Starline Warranty.  (Doc. 42–1 at 4.)  Starline tendered defense and indemnity of the claims by the homeowners to ICSOP in March 2014, September 2015, and December 2015, but ICSOP did not respond to Starline's tenders.  (*Id.*)  Starline's claimed damages are costs it alleges it incurred to remove and replace IGUs at Grande North.  (*Id.* at 5.)  Starline has not yet paid its vendors, Starline Windows, Ltd. (f/k/a Starline Architectural Windows, Ltd.) ("Limited") and Starline Windows USA, LLC ("USA"), for the replacement IGUs or the labor to remove and replace the affected IGUs.[1]  (*Id.*)  Starline is an entirely separate company from its vendors, Limited, USA, and Star Team.  (*Id.*; Doc. 39–1 at 10.)  On April

---

[1] Starline purchased the original window-wall system, including the IGUs, from Limited, and Star Team performed the original installation work.  (Doc. 39–1 at 10.)  Starline also purchased the replacement IGUs from Limited, and USA installed the replacement IGUs. (*Id.* at 11.)

2, 2021, Starline filed the instant action against ICSOP alleging causes of action for: (1) declaratory relief, and (2) breach of contract for failure to defend and indemnify Starline. (*See* Doc. 1)

On July 13, 2022, ICSOP filed the instant MSJ.  (*See* Doc. 39.)  ICSOP contends it does not owe a duty to indemnify Starline for the amounts Starline alleges it incurred to replace IGUs at Grande North because: (1) "the window claims indisputably do not involve covered 'property damage' and are otherwise excluded by the business-risk exclusions" in the OCIP Policy; (2) as a supplier of the window-wall system, Starline does not qualify as an Additional Named Insured under the OCIP Policy, but rather is considered an additional insured for faulty installation work performed by its subcontractor (Star Team), and there are no allegations that faulty installation was the cause of the window claims; and (3) "Starline is no longer legally obligated to pay the damages it allegedly incurred to replace the defective IGUs at Grande North."  (Doc. 39–1 at 17.)

B.  OCIP Policy

Bosa purchased the OCIP Policy for the Grande North project which names the Liberty Policy as the primary policy and the ICSOP Policy as the excess policy.  (Doc. 39–1 at 12.)  The ICSOP Policy follows form to the Liberty Policy and expressly incorporates the terms and conditions of the Liberty Policy, unless otherwise provided in the ICSOP Policy.  (*Id.*)  The OCIP Policy provides commercial general liability coverage.  (Doc. 41 at 11; *see* Doc. 1–2.)

The relevant policy language is as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

. . .

4

**2. Exclusions**

This insurance does not apply to:

. . .

    **k.**   **Damage To Your Product**

       "Property damage" to "your product" arising out of it or any part of it.

. . .

    **m.**   **Damage To Impaired Property Or Property Not Physically Injured**

       "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

       (1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

       (2)  A delay or failure by you or anyone else acting on your behalf to perform a contract or agreement in accordance with its terms.

       This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

    **n.**   **Recall Of Products, Work Or Impaired Property**

       Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

       (1)  "Your product";

       (2)  "Your work";

       (3)  "Impaired property";

       if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

. . .

17. "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

21. "Your Product":

    a.  Means:

        (1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
            (a)  You;
            (b)  Others trading under your name; or
            (c)  A person or organization whose business or assets you have acquired; and
        (2)  Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.  Includes:

        (1)  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
        (2)  The providing of or failure to provide warnings or instructions.

22. "Your work":

    a.  Means:

        (1)  Work or operations performed by you or on your behalf; and
        (2)  Materials, parts or equipment furnished in connection with such work or operations.

/ / /

/ / /

b. Includes:

(3) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
(4) The providing of or failure to provide warnings or instructions.

(Doc. 1–2 at 65, 70–71, 86–87.)

## II.   LEGAL STANDARDS

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Fortune Dynamic*, 618 F.3d at 1031 (internal quotation marks and citations omitted); *accord Anderson*, 477 U.S. at 248.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex*, 477 U.S. at 323.  In order to carry its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Jones v. Williams*, 791 F.3d 1023, 1030–31 (9th Cir. 2015) (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).  Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  *T.W. Elec. Serv.*, 809 F.2d at 630

7

(citations omitted); *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). The nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted).

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. In ruling on a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III. DISCUSSION

### A.   Breach of Contract Cause of Action

ICSOP contends the Window Claims are not covered under the OCIP Policy and that ICSOP does not owe a duty to indemnify Starline because: (1) "the window claims indisputably do not involve covered 'property damage' and are otherwise excluded by the business-risk exclusions" in the OCIP Policy; (2) as a supplier of the window-wall system, Starline does not qualify as an Additional Named Insured under the OCIP Policy, but rather is considered an additional insured for faulty installation work performed by its subcontractor, Star Team; and (3) "Starline is no longer legally obligated to pay the damages it allegedly incurred to replace the defective IGUs at Grande North." (Doc. 39–1 at 17.)

#### a.   Coverage Under the OCIP Policy

##### i.   *Whether the Window Claims Constitute "Property Damage"*

The OCIP Policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Doc. 1–2 at 86.)

/ / /

1           1.      Physical Injury to Tangible Property

2           ICSOP first argues that the Window Claims do not involve "property damage"

3  through physical injury because the migrating PIB did not cause damage to anything other

4  than the IGUs supplied by Starline.  (Doc. 39–1 at 17.)

5           Under California law, "the prevailing view is that the incorporation of a defective

6  component or product into a larger structure does not constitute property damage unless

7  and until the defective component causes physical injury to tangible property in at

8  least some other part of the system." *Webcor Constr., LP v. Zurich Am. Ins. Co.*, 372 F.

9  Supp. 3d 1061, 1071 (N.D. Cal. 2019), *aff'd*, 801 F. App'x 557 (9th Cir. 2020) (quoting *F*

10 *& H Constr. v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364, 372 (2004)).   Generally,

11 liability policies "are not designed to provide contractors and developers with coverage

12 against claims their work is inferior or defective.  The risk of replacing and repairing

13 defective materials or poor workmanship has generally been considered a commercial risk

14 which is not passed on to the liability insurer." *Maryland Cas. Co. v. Reeder*, 221 Cal.

15 App. 3d 961, 967 (Ct. App. 1990), *modified* (July 25, 1990).  "Rather liability coverage

16 comes into play when the insured's defective materials or work cause injury to property

17 other than the insured's own work or products." *Id.*  "In the absence of allegations or

18 extrinsic facts suggesting that the defective work or materials caused damage to *other*

19 *property*, or physically harmed the whole of the structure, such as by introducing a

20 hazardous contaminant, no potential for coverage exists."  *Webcor Constr., LP*, 372 F.

21 Supp. 3d at 1071; *see Reg'l Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal. App. 4th

22 1377, 1392–93 (2014).

23         It is ICSOP's position that the OCIP Policy does not provide coverage for the

24 Window Claims because the migrating PIB did not cause damage to anything other than

25 the IGUs.  (Doc. 39–1 at 17.)  ICSOP explains that "the incorporation of a defective product

26 into a building does not constitute 'property damage' covered by a commercial general

27 liability policy unless and until the defective product causes 'physical injury to tangible

28 property' in at least some other part of the system." (*Id.* at 18.)  Moreover, ICSOP contends

that "[c]osts incurred solely for the repair or replacement of faulty workmanship or inferior materials are not covered under general liability policies" and "[t]his is because poor workmanship is not a commercial risk that is passed on to a liability insurer." (*Id.* (citing *Maryland Cas. Co. v. Reeder*, 221 Cal. App. 3d 961, 967–68 (1990)).) Starline admits that the migrating PIB did not cause damage to anything other than the IGUs, and Starline's experts agree that no building components other than the IGUs incorporated in the window-wall system were damaged. (Doc. 39–1 at 19; *see* Ex. 9 to Doc. 39–2, Decl. of Jeffrey N. Labovitch ISO ICSOP's MSJ ("Labovitch Decl.").) It is ICSOP's position that the PIB migrated because it was defective and, thus, there is no coverage afforded under the OCIP Policy. (Doc. 39–1 at 19–20.) However, ICSOP explains that, "even if the dripping PIB on the IGUs qualified as covered 'property damage,' the OCIP Policy includes 'business-risk exclusions' that otherwise remove coverage" for the Window Claims. (*Id.* at 20.) The exclusions include: (1) Exclusion K – Damage To Your Product; (2) Exclusion M – Damage to Impaired Property Or Property Not Physically Injured; and (3) Exclusion N – Recall Of Products, Work Or Impaired Property. (*See* Doc. 1–2 at 70–71; *see supra* p. 5.) ICSOP explains that "the only alleged damages concern costs that Starline claims it incurred in having to replace the IGUs that it supplied and had installed at Grande North." (Doc. 39–1 at 21.) Thus, ICSOP contends that the lack of "property damage" and the aforementioned "business-risk exclusions" preclude coverage for the Window Claims and ICSOP does not owe a duty to defend Starline. (*Id.*)

Starline counters that the Window Claims are within the scope of the OCIP Policy and that there was property damage because of physical injury to the IGUs. (Doc. 41 at 19–20.) Here, "the affected PIB fundamentally changed its physical properties over time, losing molecular weight and viscosity as a result of chemical reactions . . . due to unexpected and extreme microclimates in the window-walls." (*Id.* at 21.) "[T]he PIB's appearance, shape, dimension, and color also changed . . . it migrated from its original position between the spacer bars and the glass edges, and onto the viewing areas of the glass surfaces of the IGUs" which caused a visual obstruction. (*Id.*) Starline explains that

1   "California courts have found that physical injury 'unambiguously connotes damage to

2   tangible property causing an alteration in appearance, shape, color or in other material

3   dimension.'"   (*Id.* at 20–21 (quoting *F & H Constr.*, 118 Cal. App. 4th at 376).)   It is

4   Starline's position that "[w]hether the IGUs damaged by PIB migration are labeled 'faulty'

5   or 'inferior' or 'damaged,' the OCIP Policy does not insure based on the label given the

6   damage.   Instead, the OCIP Policy applies where there is physical injury to tangible

7   property or loss of use."   (Doc. 41 at 22.)   Thus, Starline contends that in the instant

8   situation, the IGUs suffered physical injury from PIB migration which constitutes

9   "property damage" under the OCIP Policy.   (*Id.*)

10         The OCIP Policy defines property damage as "[p]hysical injury to tangible property

11   . . . ."   (Doc. 1–2 at 86.)   Applying that definition, "the prevailing view is that the

12   incorporation of a defective component or product into a larger structure does not constitute

13   property damage unless and until the defective component causes physical injury to

14   tangible property in at least some other part of the system."   *F & H Constr.*, 118 Cal. App.

15   4th at 372.   Based on the evidence presented, the Court finds that the damage alleged in

16   the Window Claims do not involve injury to any structure other than the IGUs.   (Doc. 39–

17   1 at 10; *see* Exs. 4, 9 to Labovitch Decl.)   Through written discovery, Starline admits that

18   "there was no physical injury to tangible property at [Grande North] other than to the IGUs

19   at [Grande North] which were damaged by PIB migration."   (Ex. 4 to Labovitch Decl.)

20   Moreover, Starline's expert, Richard Cechner, provides that the resulting damage from the

21   PIB migration is "all confined within the IGU." (Ex. 9 to Labovitch Decl.)   Thus, it appears

22   the damage was limited to the IGUs and did not extend to any other tangible property.

23   Accordingly, the Court finds no disputed issue of material fact that creates a potential for

24   property damage via physical injury covered by the OCIP Policy.   *See Travelers Prop. Cas.*

25   *Co. of Am. v. Allwire, Inc.*, 508 F. Supp. 3d 736, 743 (C.D. Cal. 2020) ("there is only

26   physical injury to property 'when the insured's defective materials or work cause injury to

27   property other than the insured's own work or products'") (quoting *Maryland Cas. Co.*,

28   221 Cal. App. 3d at 967)); *see also F & H Constr.*, 118 Cal. App. 4th at 347, 377 (finding

3:21-cv-00578-RBM-DEB

1   no property damage because "the grade A–36 pile caps were an inferior product . . .

2   [h]owever, welding the caps to the driven piles did not damage the piles or any other

3   property; it merely rendered the piles inadequate for their intended purpose, and as noted,

4   commercial risk is not covered by liability insurance").

###                2.      Loss of Use of Tangible Property

6           Additionally, Starline argues that even if the migrating PIB does not constitute

7   property damage through physical injury, it does constitute property damage through loss

8   of use of the IGUs.  (Doc. 41 at 23.)  Starline explains "[t]he entire purpose of a window

9   is to have a transparent environmental barrier which allows light to pass through it – the

10  PIB migration blocking the light and views through the glass within the IGUs means that

11  they cannot be used for their intended purpose, thus being a loss of use."  (*Id.*; *see* Ex. 1 to

12  Doc. 41–1, Decl. of T. Daniel Heffernan ISO Starline's Opposition ("Heffernan Decl.").)

13  Thus, it is Starline's position that the PIB migration prohibited the IGUs from being used

14  as windows and thus constitutes property damage as defined in the OCIP Policy.  (Doc. 41

15  at 23.)

16          ICSOP counters that loss of use is described as the "measure of damages . . . [that]

17  may be determined with reference to the rental value of similar property which the plaintiff

18  can hire for use during the period when he is deprived of the use of his own property."

19  (Doc. 42 at 8 (quoting *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 818 (1994)).)

20  ICSOP explains that, here, Starline does not make any cognizable claim for "loss of use"

21  and that "the only damages [Starline] seeks concern costs it allegedly incurred to remove

22  and replace its defective IGUs."  (Doc. 42 at 9.)  Thus, "[b]ecause the only damage at issue

23  is to Starline's defective product that it supplied, Starline cannot meet is burden to bring

24  the Window Claims within the OCIP [Policy's] insuring agreement."  (*Id.*)

25          The Court again finds the allegations in the complaint are insufficient to constitute

26  property damage, and Starline's loss of use argument fails.  *See Emps. Mut. Cas. Co. v. N.*

27  *Am. Specialty Flooring, Inc.*, 424 F. Supp. 3d 958, 969 (E.D. Cal. 2019) (finding that

28  "property damage is not established by the mere failure of a defective product to perform

as intended.  Nor is it established by economic losses such as the diminution in value of the structure or the cost to repair a defective product structure"); *see also St. Paul Fire & Marine Ins. Co. v. Coss*, 80 Cal. App.3d 888, 892 (1978) (denying coverage for "engaging architects and contractors to correct the defective work of [the subcontractor], for loss of use of the house, for having to rent a substitute residence, and for attorney's fees incurred in prosecuting their action against [the subcontractor]" where the defective work did not cause any actual physical damage to any parts of the home); *F & H Constr.*, 118 Cal. App. 4th at 377 (concluding the claims are not covered as "property damage" under the relevant policy because the only costs claimed "are the costs for repairing and modifying the defective caps and for loss of the early completion bonus" and  "[a] contrary conclusion would allow contractors and developers to obtain liability insurance for inferior or defective workmanship, a risk not covered by commercial liability insurance").

### iii.    Elimination of Coverage for "Your Products" Provision

Starline goes on to explain that the OCIP Policy includes an amendment titled "Elimination Of Coverage For 'Your Products'" which confirms coverage for "work" of subcontractors such as Starline and Star Team.  (Doc. 41 at 23–24.)  The provision provides:

> It is agreed that this insurance policy . . . does not apply to "bodily injury" or "property damage" arising out of any and all products manufactured, sold, handled, distributed, or disposed of by the First Named Insured or its Affiliates.  This provision does not apply to "work" performed by an Additional Name Insured at a Project Site that is intended to permanently remain as part of the completed project after completion of the project.

(Doc. 1–2 at 37–38.)  Starline argues this provision confirms coverage for Bosa and its insured contractors for "work" performed by Bosa's subcontractors which is "intended to permanently remain as part" of Grande North.  (Doc. 41 at 24.)  Since the "IGUs are materials, parts and/or equipment furnished in connection with installation of the window-wall system, and were intended to permanently remain where fastened, for the lifetime of the building," Starline believes coverage is afforded.  (*Id.*)

13

ICSOP counters that the above provision does not restore coverage for the Window Claims because "[t]his provision applies specifically to Bosa as the 'First Named Insured' and provides that there is no coverage for 'property damage' arising out of 'products manufactured, sold, handled, distributed, or disposed of by [Bosa] or its Affiliates.'" (Doc. 39–1 at 21.) Thus, "[b]ecause this provision only applies to coverage being sought by Bosa, the provision is irrelevant for purposes of Starline's claim for coverage." (*Id.*) ICSOP goes on to explain that the terms "work" and "operations" are two distinct terms, which Starline uses interchangeably. (Doc. 42 at 9–10.) The term "work" includes "materials, parts or equipment furnished in connection with the operations." (*Id.*; *see* Doc. 1–2 at 60.) Here, "Starline concedes that the Window Claims do not arise out of Star Team's installation of the window-wall system (i.e., its operations) at Grande North," and therefore ICSOP argues the Window Claims are precluded "from falling within the scope of the insuring agreement to begin with." (Doc. 42 at 10.) ICSOP argues that Starline's interpretation "would magically turn the OCIP Polic[y] from [a] liability polic[y] to a performance bond or warranty of the entire building." (*Id.*) Even if Starline's interpretation of the provision was applied, "the Window Claims would still not be covered because . . . they do not arise out of Starline's 'work' . . . [r]ather, the Window Claims indisputably arose out of a defect in the products (the IGUs) that Starline supplied." (*Id.*)

The Court finds that the "Elimination Of Coverage For 'Your Products'" provision contained in the OCIP Policy does not otherwise restore coverage for the Window Claims. Starline's interpretation of the provision is overly broad and would provide coverage for all "materials, parts or equipment furnished in connection with the operations." (*See* Doc. 1–2 at 60.) Such interpretation would be inconsistent with various other provisions within the OCIP Policy, including Exclusion N which excludes "damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) 'Your Product'; (2) 'Your Work'; (3) 'Impaired Property.'" (Doc. 1–2 at 70; *see supra*, p. 5); *see El Dora Oil Co. v. Gibson*, 201 Cal. 231, 235 (1927) ("the whole of a contract is to be taken together, so as to

14

give effect to every part, if reasonably practicable, each clause helping to interpret the other"); *see also Emps. Reinsurance Co. v. Superior Ct.*, 161 Cal. App. 4th 906, 919 (2008), *as modified* (Apr. 22, 2008) (in interpreting an insurance contract, the Court of Appeal "consider[s] the contract as a whole and interpret[s] the language in context, rather than interpret[ing] a provision in isolation").

In conclusion, the Court finds the Window Claims do not involve "property damage" and that coverage for the Window Claims is not provided in the OCIP Policy.

### b. Whether the OCIP Policy Provides Coverage for Starline's Activities as a Supplier

It is ICSOP's position that the OCIP Policy "only provides coverage for construction activities at Grande North – not product-defect claims arising from Starline's supply of the window-wall system." (Doc. 39–1 at 22.) Thus, ICSOP contends that the OCIP Policy does not provide coverage for Starline's activities as a supplier. (*Id.* at 21–23.)

However, because the Court finds the damage alleged in the Window Claims does not constitute "property damage" as alleged in the OCIP Policy, the Court need not determine Starline's position as a supplier or a subcontractor or whether the OCIP Policy provides coverage for such role.

### c. Whether Starline is Legally Obligated to Pay Damages It Allegedly Incurred to Replace the IGUs at Grande North

ICSOP argues that "[e]ven if Starline could somehow demonstrate that the window claims are covered" under the OCIP Policy, Starline would still not be owed coverage because "Starline has paid nothing to Limited and USA for replacing the defective IGUs at Grande North" and "the applicable statutes of limitation to collect on Starline's purported debts have long since expired." (Doc. 39–1 at 23–24.)

Again, the Court finds that since the damage alleged in the Window Claims does not constitute "property damage" as defined in the OCIP Policy, the Court need not decide the instant issue.

/ / /

B.     Declaratory Relief Cause of Action

Lastly, ICSOP contends that Starline's declaratory relief action must also be dismissed because "[u]nder California law, declaratory relief 'operates prospectively to declare future rights, rather than to redress past wrongs.'"  (Doc. 39–1 at 26 (quoting *Canova v. Tr. of Imperial Irrigation Dist. Emp. Pension Plan*, 150 Cal. App. 4th 1487, 1497 (2007)).)  ICSOP explains that "[h]ere, in seeking declaratory relief, Starline is not requesting the court's guidance to declare ICSOP's defense and indemnity obligations for the future."  (Doc. 39–1 at 26.)  Rather, the window claims have been settled and fully resolved, and Starline's exclusive remedy would be through breach of contract.  (*Id.*)  However, "there is no breach of contract because the window claims are not covered under the OCIP Policies.  As such, the cause of action for declaratory relief should be dismissed." (*Id.*)

The Court disagrees with ICSOP's contention that Starline is barred from seeking declaratory relief in this action.  However, to the extent Starline seeks declaratory relief as to the Parties' "respective rights and obligations under the ICSOP Policy," the Court finds the OCIP Policy does not provide coverage for the Window Claims.[2]  (*See* Doc. 1 at 4.)

## IV.     CONCLUSION

For the foregoing reasons, Defendant's MSJ (Doc. 39) is **GRANTED**.  The Clerk of the Court is directed to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATE: March 17, 2023

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] It appears Starline does not raise any other theories of liability.  Aside from Starline's argument that ICSOP's alleged failure to defend and indemnify constitutes a breach of contract entitling Starline to declaratory relief, the Court notes no other causes of action were raised.  As such, this action may be resolved in full on the instant MSJ.

16